United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>IVO TANKU TAPANG,<br>　　　　Defendant. | Case No. 18-cv-07721-NC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 43 |

Plaintiffs John Doe and Jane Doe bring claims for wrongful death, RICO conspiracy, and aiding and abetting terrorism on behalf of themselves and other similarly situated against defendant Ivo Tanku Tapang and other unidentified defendants. Dkt. No. 41. The plaintiffs' claims arise out of alleged terrorist activity by Tapang and others in Cameroon that has led to the deaths of the plaintiffs' family members. The Court previously dismissed the plaintiffs' original complaint and granted them leave to amend. Dkt. No. 40. Tapang moves to dismiss all claims in the amended complaint for lack of jurisdiction, lack of standing, and failure to state a claim. Dkt. No. 43. The Court FINDS that the plaintiffs fail to state a claim as to their first, second, third, fourth, seventh, eighth, ninth, and tenth claims, and therefore these claims are DISMISSED. The plaintiffs' fifth and sixth claims, for conspiracy to commit international terrorism and for provision of material support to terrorists, remain. Additionally, all unidentified plaintiffs and defendants are DISMISSED from the case.

## I. BACKGROUND

### A. Facts Alleged

The following facts are alleged in the First Amended Complaint. Dkt. No. 41. In deciding this motion, the Court assumes them to be true and construes them in the light most favorable to the plaintiffs. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Plaintiffs allege that defendant Tapang resides in San Jose, CA. FAC at 1, 8. Plaintiffs claim that Tapang is a spokesperson for the Ambazonia Defense Forces, a military wing of a separatist movement involved in Cameroon. FAC ¶¶ 7, 8. Plaintiffs claim that Tapang and unidentified defendants conduct fundraising for the ADF. *Id.* ¶ 59, 65. These funds support terrorist attacks, safe houses, and training camps. *Id.* ¶ 65. Tapang and unidentified defendants also provide logistical support to ADF such as transferring weapons and equipment across international borders. *Id.* Plaintiffs allege that Tapang provides expert assistance to the ADF through Facebook postings and YouTube videos. *Id.* ¶ 66.

Plaintiff Jane Doe alleges that her father and brother were killed by ADF forces under Tapang's instructions on May 20, 2018, in Kumbo, Cameroon. *Id.* ¶¶ 17, 36, 61. Jane Doe claims that Tapang supported the ADF in its final preparations for the May 20th attack, providing them with money, cover, advice, contacts, transportation, assistance, and other material support and resources. *Id.* ¶ 65. That day, which was Cameroon's Independence Day, Jane Doe's brother tried to take their sick father to the hospital despite Tapang and the ADF having threatened anyone who came outside to celebrate the holiday. *Id.* ¶ 77–80. When they left their house, they were shot down by ADF fighters. *Id.*

John Doe claims that his father was kidnapped by Tapang's elite "Red Dragon" ADF forces and then killed in May 2018. *Id.* ¶¶ 18–20. The ADF accused John Doe's father of having been a spy of the Cameroon government. *Id.* ¶ 82. Plaintiffs state that John Doe's father was kidnapped and killed "under direct instructions from Tapang, who uses his Facebook posts to communicate policy and instructions to his Red Dragon armed fighters."

2

*Id.*

Plaintiffs allege that Tapang has provided material support and resources for "numerous other attacks in the hundreds" from late 2016 through present. *Id*. ¶ 90. They also allege that Tapang seeks to kill the president of Cameroon and thereby "plunge the country into a full-scale civil war." *Id*. ¶ 99. In a section of the FAC titled "Recent Updates Since Filing of Complaint," plaintiffs state that their attorney has been blocking Tapang's Facebook accounts but that Tapang continues to create new accounts. *Id*. ¶ 103. Tapang also allegedly threatened and demeaned plaintiffs' counsel and plaintiffs' counsel's late father, mother, and spouse in Facebook videos. *Id*. ¶ 108.

In support of these allegations, plaintiffs filed many exhibits including videos of Tapang and reports from outside agencies about Cameroonian politics. FAC, Ex. B.

**B. Procedural History**

Plaintiffs filed their original complaint and the Court granted them permission to proceed under pseudonym. Dkt. Nos. 1, 4, 6. The original complaint consisted of claims for personal injury and wrongful death, RICO conspiracy, aiding and abetting acts of international terrorism, conspiracy in furtherance of acts of international terrorism, material support of terrorism, and negligent infliction of emotional distress. Dkt. No. 1. They also moved for a temporary restraining order. Dkt. No. 16. The Court denied the motion for a temporary restraining order, finding that the plaintiffs had not shown a likelihood of irreparable harm, a likelihood of success on the merits, or that the balance of equities or the public interest were in their favor. Dkt. No. 31. Tapang filed a motion to dismiss all counts in the original complaint. Dkt. No. 32. The Court granted the motion to dismiss all counts and granted plaintiffs leave to amend the complaint. Dkt. No. 40.

Plaintiffs' amended complaint brings causes of action for (1) personal injury and wrongful death under the Anti-Terrorism Act (18 U.S.C. § 2333); (2) and (3) RICO conspiracy (18 U.S.C. § 1962); (4) aiding and abetting acts of international terrorism (18 U.S.C. § 2333(d)(2)); (5) conspiring in furtherance of acts of international terrorism 18 U.S.C. § 2333(a); (6) material support of terrorism 18 U.S.C. § 2339(a); (7) expedition

3

1  against friendly nation (18 U.S.C. § 960); (8) conspiracy to kill, kidnap, maim or injury
2  persons or damage property in a foreign country (18 U.S.C. § 956); (9) financing terrorism
3  18 U.S.C. § 2339C(a); and (10) provision of funds from within the U.S. to a place outside
4  the U.S. for unlawful activity (18 U.S.C. § 1956). Dkt. No. 1.

As relief, plaintiffs seek money damages and an injunction including a preliminary injunction restraining Tapang and unidentified defendants from engaging in the conduct alleged in the complaint. Dkt. No. 1 at 43.

Jane Doe, John Doe, and Tapang have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. Dkt. Nos. 20, 21.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill*, 80 F.3d at 337–38. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

### A. Hearing on the Motion to Dismiss the Original Complaint

At the hearing on the motion to dismiss the plaintiffs' first complaint, the Court identified the principal deficiency with the complaint as a failure to state a claim under

4

Federal Rule of Civil Procedure 8. Dkt. No. 42. The Court told the plaintiffs that the complaint suffered from a lack of clarity about who was suing whom, and for what activity. *Id*. Given the unclear picture presented, the defendant was not on fair notice as to the particular misconduct alleged and the Court was not in a position to judge whether the facts stated plausible claims to relief. *Id*.

The Court also told the plaintiffs that they sought remedies that it might lack the jurisdictional authority to apply—for example, the original complaint requested that the Court refer the defendant to the FBI, and the Court was aware of no statute or caselaw allowing it to do so. *Id*. Moreover, the Court expressed concern that there were two overarching prooblems with standing. *Id*. First, the original complaint included unidentified "Doe" plaintiffs and unidentified "Doe" defendants (separate from John Doe and Jane Doe, whom the Court granted leave to proceed by those pseudonyms). *Id*. These unnamed, unnumbered, unidentified plaintiffs and defendants included in the pleading rendered unclear precisely who was alleged to have committed what wrong and who was allegedly injured. *Id*. Second, the Court expressed concern that the named plaintiffs could lack standing to bring some of their claims because the complaint did not clarify whether they meant to sue as individuals, on behalf of the estates of their deceased loved ones, or both. *Id*. Their ability to sue in either capacity would depend on the statutory basis for their claims. *Id.* For example, the Court pointed out that the plaintiffs' claim for negligent infliction of emotional distress may fail because under California law, that claim can only be brought by someone who personally witnessed the relevant conduct. *Id*. Finally, the Court addressed the defendant's argument that the complaint raised political questions. *Id*. The Court noted that this issue might be resolved by the plaintiffs' editing the remedies they seek. *Id*.

These concerns guide the Court's analysis of whether the First Amended Complaint states a claim showing that the plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a). Broadly speaking, plaintiffs have not resolved these deficiencies as to most of their claims.

5

**B. Identification of Unnamed Plaintiffs and Defendants**

First, the Court addresses its concerns about the complaint's unidentified plaintiffs and defendants. To clarify: the Court granted John Doe and Jane Doe's motion to proceed under pseudonym and has not altered that order. Dkt. No. 6. The issue is the complaint's references to "Doe" plaintiffs "1 through 10" and "Doe" defendants "1 through 10," and the appearance of these unidentified parties throughout the FAC. Dkt. No. 41.

**1. Doe Defendants**

California state court allows for plaintiffs to name fictitious "Doe" defendants in the complaint if the plaintiff is ignorant of a defendant's true name. Cal. Code Civ. P. § 474. No such provision exists under the Federal Rules of Civil Procedure. The Ninth Circuit has held that plaintiffs cannot sue "Doe" defendants in diversity actions because doing so prevents the Court from ensuring the citizenship of the unnamed defendants. *Fifty Assoc. v. Prudential Ins. Co. of America*, 446 F.2d 1187, 1191 (9th Cir. 1970). In federal question cases, the plaintiff may plead a Doe defendant but, when doing so, the plaintiff must allege why the defendant's true name was not yet known or ascertainable. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 408 U.S. 388, 390 (1971); *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989). The problem with Doe defendants is practical: without identifying defendants, the complaint cannot put them on fair notice of the plaintiffs' claims or the misconduct alleged. *Dura Pharmaceuticals, Inc. v. Braudo*, 544 U.S. 336, 346 (2005). The Court may dismiss Doe defendants who have not been served within 90 days of filing the complaint. Fed. R. Civ. P. 4(m).

The FAC states that "DOES defendants 1 through 10 are US residents, nationals, citizens, who are natives of Cameroon, whose conduct, voluntary or involuntary, supports or promotes the goals of Tapang Ivo, his ADF, agents, fighters, and related organizations in violation of Federal and Stat Anti-terrorism laws, and other criminal statutes." FAC at 8. Throughout the FAC, plaintiffs frequently attribute conduct not to named defendant Tapang but to "Tapang and his accomplices, and DOES defendants." *See, e.g.*, FAC at 20. Other times, the complaint directly attributes conduct not to Tapang but to others. For

1 example, the complaint alleges that "using the material support provided by Tapang, ADF
2 fighters who, on information and belief, were the 'Red Dragons' under the direct command
3 of Tapang, mercilessly killed Jane Doe's father and brother." *Id*.

Generally, the FAC remains unclear as to what conduct is attributed to whom. Tapang is the only specifically named defendant, and plaintiffs provide no explanation for why they do not know the true names of the Doe defendants. Further, much of the conduct alleged is not clearly identified to Doe defendants or to Tapang, but to "ADF fighters" or "Red Dragons," with no explanation as to whether these people are the Doe defendants or not. This lack of clarity makes it impossible for these defendants to defend themselves from the plaintiffs' claims. The plaintiffs have not shown that they are attempting to identify the Doe defendants. Plaintiffs have not served the Doe defendants, though the complaint was filed over 90 days ago, as required under Fed. R. Civ. P. 4(m). For these reasons, the unidentified Doe defendants are hereby **DISMISSED** from this case. If the plaintiffs wish to add parties to the case at a later time, they must seek leave of Court to do so. This order proceeds to analyze the plaintiffs' claims only as to the alleged conduct of defendant Tapang.

**2. Doe Plaintiffs**

Plaintiffs also list "Doe" plaintiffs. Dkt. No. 1 at 41, 8. The FAC states: "DOES Plaintiffs 1 -1000 are nationals of Cameroon, whether living in the USA or in Cameroon, who have suffered injury or harm, whether to themselves, or death of their parents and siblings, due to the actions of Tapang and DOES Defendants." *Id*. at 8. Plaintiffs' counsel has apparently created a website to invite these Doe plaintiffs to join the case. *Id*. The Court told the plaintiffs at the hearing on the previous motion to dismiss that this lack of specificity as to the plaintiffs in the case causes the complaint to fail under Rule 8 because the Court cannot determine whether these unidentified plaintiffs are entitled to relief. Dkt. No. 42. The Court has not permitted any plaintiffs besides John Doe and Jane Doe to proceed under pseudonym. The FAC has not remedied the original complaint's failure to identify these other plaintiffs. Therefore, the unidentified Doe plaintiffs are hereby

7

1  **DISMISSED** from this case. If the plaintiffs wish to add parties to the case at a later time,
2  they must seek leave of Court to do so. This order proceeds to analyze the plaintiffs'
3  claims only as to the named plaintiffs John Doe and Jane Doe.

### C. John Doe and Jane Doe's Standing

To sue, a plaintiff must have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 398, 401 (1992). Standing refers to whether "the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). A plaintiff's standing is based on his own legal rights and interests, rather than the legal rights or interests of third parties. *Elk Grove Unified School Dist. v. Newdow*, 642 U.S. 1, 14 (2004). A plaintiff may represent a third party's rights if that party is unable to assert their own rights, such as if they are deceased, under certain conditions. *Powers v. Ohio*, 499 U.S. 400, 210 (1991). To have standing, plaintiffs must plead that there is a casual connection between their injury and the conduct alleged by the defendant. *Lujan*, 405 U.S. at 559–560. The plaintiff must also request relief that is substantially likely to redress their injury. *Id*.

The Court inquired at the hearing on the prior motion to dismiss whether the plaintiffs intend to sue in their individual capacities or on behalf of the estates of their loved ones. Dkt. No. 42. The FAC clarifies that the plaintiffs intend to proceed in both capacities for their wrongful death claims. FAC at 32 ("plaintiffs individually and as estate representatives"). The Court will address standing issues as they relate to specific claims below.

### D. Count One: ATA Direct Liability

#### 1. "International Terrorism"

Plaintiffs bring claims for personal injury and wrongful death under the Anti-Terrorism Act. 18 U.S.C. § 2333. The ATA states that "any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs," may sue for damages. 18 U.S.C. § 2333(a). "International terrorism" is defined as activities involving violent acts in violation of the criminal laws of the United States that appear to be intended to intimidate or coerce a

8

civilian population; to influence the policy of a government by intimidation or coercion; or to affect the conduct of a government by mass destruction, assassination, or kidnapping; and occur primarily outside of the United States. 18 U.S.C. §§2331(A)–(C).

Plaintiffs' allegations of the activities of the ADF create a plausible pleading that its conduct constitutes "international terrorism" under the ATA. They allege that the ADF's activities violate U.S. criminal laws (e.g., murder); that these activities are designed to intimidate the civilian population in parts of Cameroon and to affect the conduct of the Cameroonian government; and these activities occur outside of the United States. 18 U.S.C. §§2331(A)–(C). In response to the parties' briefing on this question, the Court wishes to clarify that it has not hereby declared or determined that anyone or any entity is a "terrorist." Rather, the Court finds—under the standard for a motion to dismiss, where this Court must take all plaintiffs' allegations of fact as true and construe all facts in the light most favorable to them—that plaintiffs have simply sufficiently alleged that at least some of ADF's alleged conduct is international terrorism.

### 2. Proximate Causation

Direct liability under the ATA requires that the defendant's conduct was at least a proximate cause of the plaintiffs' injury. *Fields v. Twitter, Inc.*, 881 F.3d 739, 744 (9th Cir. 2018) (holding that the "by reason of" language in 18 U.S.C. § 2333(a) requires a showing of proximate causation). Therefore, plaintiffs must allege "at least some direct relationship between the injuries that he or she suffered and the defendant's acts." *Id*. Even if the defendant's acts were a substantial factor in the sequence of causation and the injury was foreseeable, the proximate cause requirement is not met. *Id*. at 749. Plaintiffs must allege that the injury was "impacted, helped by, or the result of" the defendant's conduct. *Id*. at 750.

Here, plaintiffs allege that John Doe's and Jane Doe's family members were killed by "ADF fighters." FAC at 23. The closest that plaintiffs come to pleading a causal relationship between the killings and defendant Tapang is their broad allegation that "[o]n information and belief, the ADF fighters who killed" the plaintiffs' family members "were

9

acting under direct instructions from defendant Tapang and his co-conspirators, Does defendants 1 through 10." *Id*.

As to the death of Jane Doe's father and brother, plaintiffs allege that "Tapang and his accomplices, and DOES defendants, set in motion, a series of postings, threats, warnings" to the civilian population not to celebrate Cameroonian Independence Day on May 20, 2018. FAC at 20. Jane Doe's father and brother left their house so that her brother could take her father to the hospital. *Id*. Both were killed. *Id*. As to the death of John Doe's father, plaintiffs allege that "John Doe's father was killed by Tapang's ADF because, as they stated and posted his dead body in social media groups, he was a traditional ruler and spy of the Cameroon government." *Id*. Plaintiffs quote a social media message attributed to Tapang that they say led to the killing of John Doe's father. *Id*.

The Court FINDS that the plaintiffs have failed to establish proximate causation between Tapang's conduct and the deaths of their family members. The plaintiffs provide many exhibits including Tapang's alleged social media postings and other online activity, and suggest that these postings led somehow to their injuries. But plaintiffs do not show a direct relationship between Tapang's acts and the alleged killings except with vague, conclusory language that fails to even identify Tapang as the actor with particularity ("[o]n information and belief, the ADF fighters who killed" the plaintiffs' family members were directed by "defendant Tapang and his co-conspirators, Does defendants 1 through 10," FAC at 23). This is not enough to meet the proximate cause requirement recently articulated by the Ninth Circuit in *Fields*. 881 F.3d at 744.

Furthermore, plaintiffs lack standing to sue in representative capacities on behalf of the estates of their loved ones because their family members were not United States nationals. The ATA states that any "national of the United States injured in his person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue"—thus, because the decedents were not U.S. nationals, their

estates lack standing to sue the ATA.[1] 18 U.S.C. § 2333.

The plaintiffs also allege a host of other conduct and injury, ranging from property damage to ruined business interests. *Id.* at 6. For these other injuries, plaintiffs do not allege any specific conduct of Tapang that was the proximate cause of their suffering and do not provide sufficient facts to describe the vaguely-referenced damages.

The Court finds that plaintiffs have had sufficient opportunity to allege facts to support their claims, and that further opportunity to do so would therefore be futile. The plaintiffs have filed two complaints, a motion for default judgment, and two motions for temporary restraining orders, along with many hundreds of pages of exhibits, additional filings of "supplemental evidence" such as compact discs containing videos, and requests for judicial notice. *See* Dkt. Nos. 1, 10, 16, 22, 26, 28, 29, 41, 48, 49.[2]

For these reasons, Count One is **DISMISSED without leave to amend.**

### E. Counts Two and Three: RICO Conspiracy under 18 U.S.C. § 1962(c) and (d)

Claims under the Racketeer Influence and Corrupt Organizations (RICO) Act carry a presumption against extraterritoriality. *Jesner and RJR Nabisco. Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016). A private RICO plaintiff must allege a domestic injury. *Id.* at 2106. To overcome the presumption against extraterritoriality, plaintiffs must establish a "clear indication of extraterritorial effect." *Id.* at 2102. The plaintiffs here have not done so. The conduct alleged in the complaint occurred primarily outside of the United States, in Cameroon. Plaintiffs have not shown that they have a private right of action under the RICO statute for this alleged conduct because they have not met their burden to overcome the statute's presumption against extraterritoriality. Because the plaintiffs cannot cure this deficiency by pleading additional facts, counts two and three are therefore **DISMISSED without leave to amend.**

---

[1] The complaint alleges that John Doe and Jane Doe are U.S. citizens but does not allege that any of the decedents are U.S. nationals. FAC at 7.
[2] Furthermore, plaintiffs filed a similar case in the Central District of California. Defendant filed a request for judicial notice over the order on the motion to dismiss in that case (*Jane Doe, et al. v. Fobeneh, et al.* Case No. 19-cv-00995, C.D. Cal) at Dkt. No. 51. That request for judicial notice is hereby GRANTED.

11

### F. Count Four: Aiding and Abetting Acts of International Terrorism

Under the Justice Against Sponsors of Terrorism Act, the ATA was amended to allow liability to be asserted "as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). The statute requires a plaintiff to allege that the defendant "knowingly and substantially assisted in the principal violation," and was "aware that, by assisting the principal, it [was] itself assuming a role in terrorist activities." *Brill v. Chevron Corp.*, No. 15-cv-04916-JD, 2018 WL 3861659, at *3 (N.D. Cal. Aug. 14, 2018). "Simply providing material support to a terrorist organization is not enough for an aiding and abetting claim." *Cain v. Twitter*, No. 17-cv-02506-JD, at *4 (N.D. Cal. Sept. 24, 2018).

Here, the principal violations are the killings of John Doe's and Jane Doe's family members. As discussed above, the plaintiffs have only alleged a tenuous link between those deaths and Tapang's conduct. They have not shown that Tapang knew about or substantially assisted in the alleged killings, only that his role as spokesperson for the ADF inspired ADF forces generally to commit attacks that included the decedents. Without more facts pleaded to show that Tapang actually knew about these killings in particular, the plaintiffs have not stated a claim for aiding and abetting acts of international terrorism. Count four is therefore **DISMISSED without leave to amend.**

### G. Count Five: Conspiracy in Furtherance of Acts of International Terrorism (18 U.S.C. § 2333(a))

To state a claim for civil conspiracy in furtherance of acts of international terrorism, the plaintiff must allege an agreement to participate in a wrongful activity. *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983). The agreement can be inferred based on the "relationships between the actors and between the actions." *Id*. at 481. Once a conspiracy is formed, all members are liable for injuries caused by acts in furtherance of it. *Id*. To be held liable for such injuries, an individual co-conspirator "need not even have planned or known about the injurious action." *Id*.

Here, plaintiffs allege that Tapang "knowingly agreed, licensed, and permitted ADF and its affiliates" to use his social media platform, financial support, and "other services" to promote and carry out ADF's activities. FAC at 38. They include specific examples of these acts, such as allegations that Tapang raised $21,653 online for ADF, negotiated a deal for cartridges of magazines, and organized multiple deliveries of AK-47s and assault sniper rifles for ADF. FAC at 16. Plaintiffs also allege that Tapang recruited personnel for the ADF and trained their militia. FAC at 17–18. These allegations are sufficient to show that Tapang had an agreement with the ADF to participate in wrongful activities, including the deaths of plaintiffs' family members, whether or not he was directly involved in or even aware of those alleged murders.

The motion to dismiss the plaintiffs' claim for conspiracy in furtherance of acts of international terrorism is **DENIED.**

## H. Count Six: Provision of Material Support to Terrorists (18 U.S.C. § 2339(a) and § 2333)

18 U.S.C. § 2339(a) prohibits provision of "material support or resources for terrorist activities or foreign terrorist organizations. "Material support or resources" means "any property, tangible or intangible, or service." 18 U.S.C. § 2999A(b)(1). Based on the same facts alleged in Section G, above, the Court FINDS that the plaintiffs have adequately pleaded a claim for provision of material support of terrorism. The motion to dismiss this claim is **DENIED.**

## I. Counts Seven and Eight: Expedition Against Friendly Nation (18 U.S.C. § 960) and Conspiracy to Kill, Kidnap, Maim or Injury Persons or Damage Property in a Foreign Country (18 U.S.C. § 956)

For their seventh and eighth causes of action, plaintiffs state that they "do not seek damages," but seek "an injunction and declaratory relief in order to protect their property and business interests from ongoing obliteration by defendant's action." FAC at 39, 40. The property and business interests referenced are completely undefined. *Id*. The Court thus sees no injury to the plaintiffs for these counts. With no injury to redress, the

plaintiffs have no standing. Counts seven and eight are therefore **DISMISSED without leave to amend.**

J. **Counts Nine and Ten: Financing Terrorism (18 U.S.C. § 2339C(a)) and Provision of Funds from Within USA to Place Outside USA for an Unlawful Activity (18 U.S.C. § 1956)**

For their ninth and tenth causes of action, plaintiffs state that the defendant's violation of 18 U.S.C. § 2339C(a) and § 1956 caused "the attack that injured and killed [their] employees." FAC at 41. They also refer to "the death of Plaintiff's employees and wife." FAC 42. The complaint does not state that plaintiffs have or had any employees or that any employees were ever killed. The complaint does not state that either plaintiff was married or that anyone's wife was killed. The Court thus sees no injury to the plaintiffs for these counts. With no injury to redress, the plaintiffs have no standing. Count nine is therefore **DISMISSED without leave to amend.**

## IV. CONCLUSION

The plaintiffs' first, second, third, fourth, seventh, eighth, ninth, and tenth claims are **DISMISSED**. Because the Court finds that further amendment would be futile, the plaintiffs are not granted leave to amend these claims. The plaintiffs' fifth and sixth claims—for conspiracy to commit international terrorism and for provision of material support to terrorists—remain. The unidentified plaintiffs and defendants are **DISMISSED** from this action. Only plaintiffs John Doe and Jane Doe and defendant Ivo Tanku Tapang remain in the case. Tapang must answer the fifth and sixth claims within 14 days of this Order.

**IT IS SO ORDERED.**

Dated: August 6, 2019

NATHANAEL M. COUSINS
United States Magistrate Judge

14